**MARSHALL, Deputy Com'r, et al. v. ANDREW F. MAHONY CO. et al.**

No. 6462.

Circuit Court of Appeals, Ninth Circuit.

Feb. 1, 1932.

Anthony Savage, U. S. Atty., and Jeffrey Heiman, Asst. U. S. Atty., both of Seattle, Wash., for appellant Marshall.

L. B. Sulgrove, of Tacoma, Wash., for appellant Sulgrove.

Bogle, Bogle & Gates, Lawrence Bogle, Stanley B. Long, Grosscup & Morrow, and John Ambler, all of Seattle, Wash., for appellees.

McCutchen, Olney, Mannon & Greene, Farnham P. Griffiths, and Charles E. Finney, all of San Francisco, Cal., amicus curiæ on behalf of Waterfront Employers of San Francisco.

Before WILBUR and SAWTELLE, Circuit Judges, and WEBSTER, District Judge.

WEBSTER, District Judge.

This is an appeal from a decree in equity enjoining in part the enforcement of an award of compensation made to appellant Winkler, an injured longshoreman, by the appellant Marshall, deputy commissioner for the fourteenth district under the Longshoremen's and Harbor Workers' Compensation Act of March 4, 1927, 44 Stat. 1424 (33 USCA §§ 901–950). The question presented for decision calls for an interpretation of the act with respect to the method of ascertaining or computing the amount of compensation to be paid an injured workman entitled to the benefits of the act. The findings of the deputy commissioner concerning Winkler's injury and compensation are as follows:

"That on the 8th day of August, 1930, the claimant above named was in the employ of the employer above named at Seattle, in the State of Washington, in the Fourteenth Compensation District, established under the provisions of the Longshoremen's and Harbor Workers' Compensation Act, and that the liability of the employer for compensation under said Act was insured by the Fidelity-Phoenix Fire Insurance Company; that on said day claimant herein while performing service for the employer upon the navigable waters of the United States, sustained personal injury resulting in his disability while he was employed as a longshoreman on board the steamship 'Jane Nettleton,' said steamship being then situated at Seattle, in the State of Washington; that while the claimant above named was so employed and engaged in lifting bags of salt he sustained an inguinal hernia, causing injury and resulting in his disability; that notice of injury was given within thirty days after the date of such injury to the Deputy Commissioner and to the employer; that the employer furnished claimant with medical treatment, etc., in accordance with section 7 (a) of the said Act (33 USCA § 907 (a); that the claimant was engaged solely in the occupation of a longshoreman for many years prior to the time of injury; that the actual earnings of the claimant for the calendar years 1927, 1928 and 1929 were respectively $1,163.16; $1,266.63, and $1,406.29 and during the first six months of the year 1930, the earnings of the claimant amounted to the sum of $620.87; that during the year immediately preceding his injury the claimant was disabled by reason of illness for ten days, but during the remainder of said period he followed solely the employment of a longshoreman, reporting to the place of employment as frequently as required, being ready and willing to undertake and perform all work as a longshoreman offered to him; that during the said period the claimant earned a total of $1,266.20, based on an hourly wage, for work performed by him as longshoreman; that during said period the claimant worked as a longshoreman on 182 days or parts of days, and, therefore, claimant did not work in such employment during the whole of the year immediately preceding his injury; that M. Diegnan is a workman engaged in the occupation of a longshoreman in the same port in which the claimant sustained his injury and is an employee of the same class as the claimant; that during the year immediately preceding said injury the said M. Diegnan worked as a longshoreman 284 days and, therefore, worked substantially the whole of said year; that said Diegnan earned a total of $2,314.45 for such labor, an average of $8.15 per day, during the days so employed; that 300 times the said average of $8.15 per day, amounts to the sum of $2,445.00; that the average annual earnings of the claimant, as determined by subdivision (b) of section 10 of the Act (33 USCA § 910 (b), is $2,445.00; that as a result of the injury sustained the claimant was wholly disabled from August 9, 1930, to and including October 17, 1930, and is entitled to 10 weeks' compensation, $25.00 per week, for such disability; that the disability of the claimant continued at the time of the hearing on October 23, 1930; that the employer has paid $178.53 to claimant as compensation."

From the findings it will be observed that the deputy commissioner found that Winkler had been employed during the year preceding his injury on 182 days or parts of days, and therefore did not work substantially the whole of that year; that during the year the claimant was disabled by illness for about 10 days, but that with this exception he followed solely the employment of a longshoreman, reporting to the place of employment as fre-

quently as required, being ready and willing to undertake all work as a longshoreman that might be offered him; that one Diegnan was a workman engaged as a longshoreman at the port of Seattle, and was an employee of the same class as Winkler; that during the year immediately preceding Winkler's injury Diegnan worked 284 days, or substantially a whole year, and earned a total of $2,314.45, or an average of $8.15 per day during the time of his employment. The deputy commissioner then computed Winkler's compensation under subdivision (b) of section 10 of the act in this manner: He multiplied $8.15 by 300 days, making $2,445; he then divided $2,445 by 52 weeks, getting a quotient of $47.02; he then took two-thirds of the quotient, which amounted to $31.25; this being in excess of the maximum amount authorized by the act, $25 per week, the permissible maximum, was awarded the injured employee. The deputy commissioner made no findings concerning the regularity or irregularity of available employment in the longshoring industry at the port of Seattle, notwithstanding there was a wealth of uncontradicted evidence submitted covering that point. The District Court held that the award of the deputy commissioner was erroneous as a matter of law; that the claimant's compensation should have been determined in the manner provided by subdivision (c) of section 10, and enjoined the enforcement of the award in excess of that amount. The court ascertained the amount of compensation to be awarded in this manner: Winkler, during the year immediately preceding his injury, earned $1,266.20; this sum was divided by 52 weeks, making his actual weekly earnings $24.35, and two-thirds of this amount, or $16.23 per week, was found to be the proper amount to be allowed. It should be noted that the average annual earnings of the claimant for the three years immediately preceding his injury, as found by the deputy commissioner, were $1,285, and the award made to him by the deputy commissioner paid him more while he was disabled than he actually earned when working.

The specific question for determination is whether, under the facts disclosed by the record, Winkler's compensation should have been measured by subdivision (b) or by subdivision (c) of section 10 of the act. That section in part reads as follows:

"Except as otherwise provided in this chapter, the average weekly wage of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation and shall be determined as follows:

"(a) If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same or another employer, during substantially the whole of the year immediately preceding his injury, his average annual earnings shall consist of three hundred times the average daily wage or salary which he shall have earned in such employment during the days when so employed.

"(b) If the injured employee shall not have worked in such employment during substantially the whole of such year, his average annual earnings shall consist of three hundred times the average daily wage or salary which an employee of the same class working substantially the whole of such immediately preceding year in the same or in similar employment in the same or a neighboring place shall have earned in such employment during the days when so employed.

"(c) If either of the foregoing methods of arriving at the annual average earnings of an injured employee can not reasonably and fairly be applied, such annual earnings shall be such sum as, having regard to the previous earnings of the injured employee and of other employees of the same or most similar class, working in the same or most similar employment in the same or neighboring locality, shall reasonably represent the annual earning capacity of the injured employee in the employment in which he was working at the time of the injury." (33 USCA § 910 (a–c).

Appellants rely for reversal chiefly on the case of Gunther v. United States Employees' Compensation Commission, 41 F. (2d) 151, 153, decided by this court in May, 1930. Appellees insist that the Gunther Case is distinguishable, and that subdivisions (a) and (b) of section 10 cannot reasonably and fairly be applied to the facts in this case because those subdivisions contemplate only an industry furnishing regular employment continuously throughout the whole year, and that employment in the longshoring industry in the state of Washington is not steady, but irregular and discontinuous in character; that to apply subdivision (b) to the facts of the instant case would result in the payment of unreasonable, arbitrary, and capricious rates of compensation, in violation of the spirit of the legislation, and would give rise to grave questions as to the constitutionality of the statute.

Neterer, District Judge, who tried the case in the court below, upheld the contention of the appellees, and in support of his judgment filed an able and exhaustive opinion, which will be found in 46 F.(2d) at page 539, 544. His analysis of the questions involved is so thorough that it would be a work of supererogation for this court again to cover the ground. He correctly points out that section 10 of the Compensation Act was adopted from the Workmen's Compensation Law of New York (Consol. Laws N. Y. c. 67); that in so adopting the act the Congress intended to adopt the construction theretofore placed upon it by the courts of the state of its enactment; that prior to the adoption of the New York statute the courts of that state had repeatedly held that the 300-day work year as set up by the statute is a standard of steady employment, and, if the nature of the employment in question does not permit steady work during substantially the whole year, the annual earning capacity of the injured employee in the employment in which he was engaged is the proper basis for compensation; that the true test is, What were the average weekly earnings of the workman? regard being had to the known and recognized incidents of his employment, including the element of discontinuousness; that, where an employee works 7 days a week for substantially an entire year, the method of determining his average annual earnings as indicated in subdivision (a) would be an injustice to him, just as it would be an injustice to the employer to apply subdivision (b) to a case where the injured employee has worked less than 6 days a week for a substantial period of time. It is further pointed out that the Supreme Courts of Michigan, California, and Utah, in construing substantially similar statutes to the one here under review, and this also prior to the enactment of the federal statute, held that language practically identical with the provisions of subdivisions (a) and (b) of section 10 contemplates a character of employment which is permanent and steady, and which, for that reason, affords to an employee the possibility of earning annually an amount measured by the number of working days in a year estimated and fixed at 300, and where employment of this kind does not exist, the case falls within the provisions of subdivision (c) under which the annual earnings are to be taken as the sum which will reasonably represent the annual earning capacity of the employee; that under subdivision (c) the amount of annual earnings is not ascertained by multiplying the employee's daily earnings by any arbitrary figure, but by ascertaining from the evidence what his earning capacity in fact was. Judge Neterer also points out that in construing the Workman's Compensation Act of England the courts of that country have held to these same views, and have applied them specifically to employment in the longshoring industry because of its irregular and discontinuous character. Upon evidence practically unchallenged, Judge Neterer found that employment in the longshoring industry in the state of Washington is of an irregular and intermittent character; that the reason why many longshoremen working at the port of Seattle do not earn higher annual wages is the lack of regular employment in the industry. In this connection he says, and the record amply bears him out:

"While the finding is that the claimant was subject to call, ready and willing and able to work, but that he was not called, the record shows that work was necessarily discontinuous, dependent upon certain conditions indeterminable in advance, because of lack of employment, and, especially from the middle of May until the fore part of August the work was slack. This, from the record, appears to be a fixed condition. It is an incident of this employment, of which the claimant was advised, and the claimant took the risk of the recognized incidents as to the work in normal conditions, and consideration must be given to that normal equation. This is not an employment of 'clock' or 'whistle,' but of recognized intermittence, with the element of discontinuousness, that claimant was paid only when he worked, and his wages when he worked must compensate for the time he did not work, and, if injured, shall be paid on a basis of 66⅔ per centum of his 'annual average earnings.' It could not have been the purpose or intent of the Congress, in view of the construction placed upon the act by the court of states from which the act in issue was largely taken, and the 'due process' and 'equal protection' clauses of the Constitution and the provisions of section 10, subdivisions (a), (b) and (c), 33 USCA § 910 (a–c), to apply the '300 rule' to this claimant upon the record in this case, when the average earning capacity is known, no interruptions of earnings being occasioned by illness or injury. These subdivisions are merely rules by which the 'annual earning capacity' may be gauged when actual earnings in normal conditions cannot be computed. The readiness, willingness, and fitness of the claimant for work does not require the employer to insure work. These conditions the claimant voluntarily accepted with the wage as satisfactory when

well, and, when injured, may not be paid under the provisions of the act more than he earned.

"Earning capacity means fitness and readiness and willingness to work, considered in connection with opportunity to work; and fitness and opportunity must go hand in hand. Claimant was ready and fit, and risk of opportunity was his. And to classify the claimant, of average annual earning capacity of $1,266.20 in the same work, under subdivision (b) on a basis of $2,445, is obviously not within the intent of the act. No abnormal condition or circumstance appearing, the nature and character of the work being well known to claimant and he having assumed the risk of 'full time,' his recovery must be based on his 'previous annual average earnings,' upon the findings in this case, which are binding on the court."

■ Unless the Gunther Case, supra, forecloses the question to the contrary in this jurisdiction, there would seem to be no escape from Judge Neterer's conclusions. He is of the opinion that the Gunther ·Case is distinguishable, and in his opinion ably points out wherein he thinks the distinction lies. It must be admitted that there is broad language in the Gunther Case which lends support to appellants' contention and to the action taken by the deputy commissioner. But the language of that case, like the language of all cases, must be taken and understood in the light of the facts of the case in which the language is employed. It was not intended to hold in the Gunther Case—and indeed it was not held—that every case is to be fitted into subdivisions (a) or (b) of section 10 merely because a set of facts may exist which, standing alone, would square with the literal provisions of those subdivisions of the section. To so hold would be completely to ignore the language of subdivision (c), which says: "If either of the foregoing methods of arriving at the annual average earnings of an injured employee cannot reasonably and fairly be applied, such annual earnings shall be such sum," etc.

■ To arrive at its proper meaning and application, section 10 (33 USCA § 910) must be taken in its entirety and its true meaning be ascertained by giving due weight and consideration to all parts of the section in the light of the general aims and objects of the statute taken as a whole. The section does not provide that every case must be measured by subdivisions (a) or (b) if it be possible to force the transaction into the formulæ which those subdivisions prescribe

and that subdivision (c) is to be applied only to cases which cannot be measured by (a) or (b). On the contrary, it provides that subdivision (c) is to be employed whenever (a) or (b) cannot reasonably and fairly be applied. The numerous authorities discussed and cited by Judge Neterer in his opinion establish overwhelmingly that subdivisions (a) and (b) cannot be reasonably and fairly applied to an industry where employment is casual, irregular, seasonal, intermittent, and discontinuous. Surely it is not reasonable or fair to apply subdivisions (a) or (b) when to do so would result in ascertaining a mere theoretical earning capacity, having no regard to the actual facts of the case, but which would award arbitrarily to an injured laborer disability compensation in excess of what he was able to earn if at work, as shown by earnings, as in this case, covering a period of 3 years next preceding his injury. Compensation acts, to be within constitutional limits, must not be arbitrary, unreasonable, or fundamentally unjust or oppressive. Gunther's Case presented this situation: The deputy commissioner found as a fact that the stevedore had worked less than 200 days during the year preceding his injury, and actual earnings for that year of $893.96 were proved. Based on these figures, the deputy commissioner awarded his widow compensation under the act. The widow offered evidence tending to show that her husband had been employed as a stevedore for a number of years and had had no other source of income; that he was unusually industrious, worked steadily whenever employment was available, and earned not less than $40 per week. A witness testified that he had known the deceased for a number of years, and, whilst he had not worked with him during the year immediately preceding his injury and death, they had worked together at other times, that they earned about the same amounts, and that during the preceding year the witness had earned $2,100. There was also other evidence tending to show an earning capacity on the part of the deceased workman of approximately $40 per week. The court there states:

"It is contended, however, that the evidence in this case is without contradiction, and establishes as a matter of law that decedent was employed substantially the whole of the year immediately preceding his injury, and that his average annual earnings were more than twice the amount so found by the deputy commissioner. We think it unnecessary to consider this phase of the case, for in our opinion the deputy commissioner erred in holding that compensation was to be deter-

mined by the provisions of subdivision (c) of section 910, and also in his practical interpretation of subdivision (c)."

In these circumstances the court held that the employee's actual earnings of $893.96 were not the proper basis upon which to compute the award; that his ability to earn should have been the primal basis for determining the compensation, and that the conclusion to be arrived at is a sum which shall reasonably represent the annual earning capacity of the claimant; that $893.96 did not reasonably represent the annual earning capacity of the workman, nor did it represent the amount of earnings which an employee of the same class working substantially the whole of the preceding year would have earned. There being no evidence in the record indicating that subdivisions (a) and (b) could not reasonably and fairly be applied, the court ordered the compensation to be computed under the provisions of subdivision (b).

The only reference to the intermittent character of the occupation of stevedore was contained in the appellees' brief as follows: "The decedent was a stevedore. Such an occupation, as a matter of common knowledge, is irregular and uncertain, periodic and intermittent. He may work four hours or fourteen hours consecutively in loading or unloading a vessel, and again no other ship may reach or leave port, or demand his services, for a week. His employment depends on the arrival and departure of vessels, amount of cargo to and from the port in question, its nature, weather conditions, and many other contingencies which make it practically impossible to definitely or approximately determine a stevedore's annual wage."

We were thus asked to take judicial notice of the intermittent character of the stevedore's occupation at San Francisco. This the court did not and could not do. There is nothing in the Gunther Case lending support to the proposition that subdivisions (a) and (b) are to be applied to irregular or discontinuous employment, or that they are to be applied regardless of results. Under the facts of the instant case, subdivision (b) of section 10 could not be reasonably and fairly applied, and the evidence offered and the uniform course of the decisions dealing with the question make this unmistakably plain. The District Court applied subdivision (c), the evidence before him showing the claimant's actual earnings for the year preceding his injury were what he normally earned in his employment and reasonably represented his annual earning capacity in the work in which he voluntarily engaged.

Decree affirmed.