**HARTFORD ACCIDENT & INDEMNITY CO.
v. HOAGE, Deputy Com'r, et al.**

**No. 6603.**

United States Court of Appeals for the District of Columbia.

Decided June 29, 1936.

Cornelius H. Doherty, of Washington, D. C., for appellant.

Leslie C. Garnett, U. S. Atty., and Allen J. Krouse, Asst. U. S. Atty., both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

ROBB, Associate Justice.

Appeal from a decree in the Supreme Court of the District dismissing appellant's bill filed under the District of Columbia Workmen's Compensation Law[1] to set aside a compensation award by appellee Hoage, as Deputy United States Compensation Commissioner, to appellee Bootman.

On May 23, 1935, Bootman, a carpenter, while employed by the Sanitary Grocery Company, was riding on the rear of a truck loaded with lumber, and as it rounded a corner he was thrown to the ground and injured. Following a hearing on his claim for compensation, the deputy commissioner found that the employee "sustained personal injury which arose out of and occurred in the course of his employment and resulted in his disability," and on August 12, 1935, made an award; and, in determining the employee's average weekly wage upon which to compute compensation, applied section 10(b) of the Workmen's Compensation Law [section 10(b), Longshoremen's Act, c. 509, 44 Stat. 1424, 1431, section 910(b), tit. 33, U.S.C.A.].

Thereafter, on September 4, 1935, appellant insurance carrier, by bill in equity in the court below against the deputy commissioner and the claimant Bootman, sought an injunction to set aside the compensation order and to compel the deputy commissioner "to award compensation to the defendant [Bootman] within the terms of the act and pursuant to the testimony or record in the cause." The transcript of the hearing before the deputy commissioner and his findings of fact were attached to and made a part of the bill, but in the record before us (which contains the findings of fact) the parties have stipulated as to the evidence before the deputy commissioner on the point in issue.

Appellant concedes that appellee Bootman is entitled to compensation, but contends that the deputy commissioner in reaching his determination as to the amount of weekly compensation should have applied section 10(c), 33 U.S.C.A. § 910(c), in which event it is asserted the amount would be $13.32; whereas, by applying section 10(b), 33 U.S.C.A. § 910(b) the amount is $25 per week (the maximum allowed by the act[2]).

The section of the statute here involved reads as follows:

"§ 10. Except as otherwise provided in this Act [chapter] the average weekly wage of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation and shall be determined as follows:

"(a) If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same or another employer, during substantially the whole of the year immediately preceding his injury, his average annual earnings shall consist of three hundred times the average daily wage or salary which he shall have earned in such employment during the days when so employed.

"(b) If the injured employee shall not have worked in such employment during substantially the whole of such year, his average annual earnings shall consist of three hundred times the average daily wage or salary which an employee of the same class working substantially the whole of such immediately preceding year in the same or in similar employment in the same or a neighboring place shall have earned in such employment during the days when so employed.

"(c) If either of the foregoing methods of arriving at the annual average earnings of an injured employee can not reasonably and fairly be applied, such annual earnings shall be such sum as, having regard to the previous earnings of the injured employee and of other employees of the same or most similar class, working in the same or most similar employment in the same or neighboring locality, shall reasonably represent the annual earning capacity of the injured employee in the employment in which he was working at the time of the injury.

---

[1] Longshoremen's and Harbor Workers' Compensation Act (chapter 509, 44 Stat. 1424, as amended by the Act of May 26, 1934, c. 354, 48 Stat. 806, 33 U.S.C.A. § 901 et seq.) made applicable to the District of Columbia as a Workmen's Compensation Law by the Act of May 17, 1928 (chapter 612, 45 Stat. 600, D.C. Code, title 19, §§ 11, 12, 33 U.S.C.A. § 901 note).

[2] See section 6(b), 33 U.S.C.A. § 906 (b).

"(d) The average weekly wages of an employee shall be one fifty-second part of his average annual earnings."

The findings of fact of the deputy commissioner, so far as here material, are substantially as follows: That "the claimant had not worked in the employment in which he was working at the time of the injury for the same or another employer during substantially the whole of the year immediately preceding his injury." That the wages paid to a carpenter by the employer, Sanitary Grocery Company, were $11 a day, or $55 a week; that consequently the average weekly wage of the claimant was established as being in excess of $37.50 per week; and that therefore the claimant was entitled to compensation at the rate of $25 per week. (Under section 8 of the act, as amended [33 U.S.C.A. § 908] compensation for disability is two-thirds of the average weekly wage, and under section 6 (b) may not exceed $25 weekly.)

The evidence before the deputy commissioner discloses that the Sanitary Grocery Company employed four regular union carpenters, who are "considered regular day-in and day-out men and they work all the time." They received $11 per day, the union wage. That when any "extra work" was to be done, union carpenters were "called in" and employed at the usual union wage; that Bootman had worked as an "extra carpenter" for that company since 1928. His earnings were as follows:

| Year | Amount | Days employed |
|------|--------|---------------|
| 1928 | $2,083.11 | 190 |
| 1929 | 2,403.82 | 219 |
| 1932 | 704.69 | 64 |
| 1933 | 1,213.50 | 110 |
| 1934 | 1,551.75 | 141 |

From December 27, 1934, until May 18, 1935, "he had no employment"; but from May 18, 1935, to the date of his injury, May 23d, he was employed by the grocery company.

The Longshoremen's Act followed in the main the Workmen's Compensation Law of the State of New York[3] (Consol. Laws N.Y. c. 67). It is familiar law that whenever Congress, in legislating for the District of Columbia, has borrowed from the statutes of a state provisions which have received in that state a known and settled construction *before* their enactment by Congress, that construction will be deemed to have been adopted by Congress together with the text which it expounded, and the provisions will be construed as they were understood at the time in the State. Capital Traction Co. v. Hof, 174 U.S. 1, 19 S.Ct. 580, 43 L.Ed. 873; see, also, Henrietta Min. & Mill. Co. v. Gardner, 173 U. S. 123, 19 S.Ct. 327, 43 L.Ed. 637; Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819; Marlin v. Lewallen, 276 U. S. 58, 48 S.Ct. 248, 72 L.Ed. 467.

Prior to the adoption of the Longshoremen's Act in 1927, the Court of Appeals of New York construed section 14 of the Workmen's Compensation Law of that State (which is almost identical with section 10 of the Longshoremen's Act), in Littler v. George A. Fuller Co. (1918) 223 N.Y. 369, 119 N.E. 554, 555. In that case, Littler, the injured employee, was employed as a bricklayer. No finding that bricklayers work substantially the whole of the year was made; on the contrary, the evidence disclosed that they average about 30 weeks' employment at their trade in each year. The compensation commission computed Littler's average weekly wage under subdivision 2 of section 14 (which is similar to section 10(b) of the Longshoremen's Act), basing the award on annual earnings of 300 times his daily wage. After pointing out that 300 days' work a year is the standard of steady employment; that under the law the average weekly wages are one fifty-second part of the employee's average annual earnings; and that the award should not exceed two-thirds of his earning capacity, the court said: "Aver-

---

3 In its report on the bill making the Longshoremen's Act applicable in the District of Columbia as a Workmen's Compensation Law, the House Committee on the District of Columbia said (H.Rep. 1422, 70th Cong., 1st Sess.): "Several trades were covered last year under the provisions of the Longshoremen's and Harbor Workers' Act. The legislation provided for in this act is particularly adapted to the District of Columbia. * * *

The bill follows in the main the New York State compensation law, which is considered one of the best owing to the fact that it was drafted after the most careful investigation by experts and others, and it has been amended from time to time to meet difficulties arising in administration, and has stood the test of experience with quite general approval."

See, also, Marshall v. Andrew F. Mahony Co. (C.C.A.9th) 56 F.(2d) 74, 77.

age annual earnings are computed under subdivisions 1, 2, or 3 of section 14, as the case requires. If the nature of the employment does not permit steady work during substantially the whole of the year the annual earning capacity of the injured employee in the employment is the proper basis of compensation. Section 14, subd. 3 [similar to section 10(c), Longshoremen's Act (33 U.S.C.A. § 910(c)]. The true test is this: What were the average weekly earnings, regard being had to the known and recognized incidents of the employment, including the element of discontinuousness?"

Section 10 of the Longshoremen's Act, under which the award in the present case was ordered, has been considered by the Circuit Courts of Appeals in the Ninth, Fourth, and Fifth Circuits.

In Marshall v. Andrew F. Mahony Co. (C.C.A. 9th, 1932) 56 F.(2d) 74, 78, the deputy commissioner found that the employee, Winkler, a longshoreman, who was injured in August, 1930, received as actual earnings for 1927 the sum of $1,163.16; 1928, $1,266.63; and 1929, $1,406.29; and during the first six months of 1930, his earnings amounted to $620.87; that during the year immediately preceding his injury, although ready and willing to undertake any work offered, he had been employed 182 days, and therefore that he did not work substantially the whole of that year; that he earned $1,266.20 during that year; that one Diegnan, a longshoreman at the same port, Seattle, was an employee of the same class as Winkler, and during the year immediately preceding Winkler's injury Diegnan worked 284 days, or substantially the whole year, and earned $2,314.45, an average of $8.15 per day. No finding was made as to the regularity or irregularity of available employment in the longshoring industry of that port, although, as pointed out by the court, "there was a wealth of uncontradicted evidence submitted covering that point." The deputy commissioner computed Winkler's compensation under section 10(b) by multiplying $8.15 (Diegnan's average daily wage) by 300, producing $2,445, one fifty-second part of which amounted to $47.02 as the average weekly wage. Two-thirds of this average weekly wage amounted to $31.25, but being in excess of the maximum allowable under the act, the injured employee was awarded $25, the maximum. The District Court [in an exhaustive opinion by Judge Neterer, 46 F.(2d) 539] held that Winkler's compensation should have been computed under section 10(c). That ruling was affirmed by the Circuit Court of Appeals, which, inter alia, said: "To arrive at its proper meaning and application, section 10 (33 U.S.C. A. § 910) must be taken in its entirety and its true meaning be ascertained by giving due weight and consideration to all parts of the section in the light of the general aims and objects of the statute taken as a whole. The section does not provide that every case must be measured by subdivisions (a) or (b) if it be possible to force the transaction into the formulæ which those subdivisions prescribe and that subdivision (c) is to be applied only to cases which cannot be measured by (a) or (b). On the contrary, it provides that subdivision (c) is to be employed whenever (a) or (b) cannot reasonably and fairly be applied. The numerous authorities discussed and cited by Judge Neterer in his opinion establish overwhelmingly that subdivisions (a) and (b) cannot be reasonably and fairly applied to an industry where employment is casual, irregular, seasonal, intermittent, and discontinuous. Surely it is not reasonable or fair to apply subdivisions (a) or (b) when to do so would result in ascertaining a mere theoretical earning capacity, having no regard to the actual facts of the case, but which would award arbitrarily to an injured laborer disability compensation in excess of what he was able to earn if at work, as shown by earnings, as in this case, covering a period of 3 years next preceding his injury."

The court adopted substantially all of the conclusions of the District Court (Neterer, J.) including the following: "Earning capacity means fitness and readiness and willingness to work, considered in connection with opportunity to work; and fitness and opportunity must go hand in hand. Claimant was ready and fit, and risk of opportunity was his. And to classify the claimant, of average annual earning capacity of $1,266.20 in the same work, under subdivision (b) on a basis of $2,445, is obviously not within the intent of the act. No abnormal condition or circumstance appearing, the nature and character of the work being well known to claimant and he having assumed the risk of 'full time,' his recovery must be based on his 'previous annual average earnings,' upon

the findings in this case, which are binding on the court."

The court also reviewed its earlier decision in Gunther v. United States Employees' Compensation Commission (C.C.A. 9th, 1930) 41 F.(2d) 151, and after referring to certain "broad language" therein, held that it was not inconsistent with its conclusion in the Mahony Case declaring: "There being no evidence in the record [in the Gunther Case] indicating that subdivisions (a) and (b) could not reasonably and fairly be applied," the court properly "ordered the compensation to be computed under the provisions of subdivision (b)."

In Baltimore & O. R. Co. v. Clark (C. C.A. 4th, 1932) 59 F.(2d) 595, 599, a proceeding under the Longshoremen's Act, the employee, Ellis, on August 25, 1931, was engaged in trimming coal on vessels lying at the pier at Baltimore on navigable waters of the United States, and suffered heat prostration, which resulted in his death. Ellis' employment was intermittent and discontinuous. For twelve months prior to August, 1931, he earned $527.30, and from August 1st to 25th, the date of injury, he earned $51.45. In computing the compensation payable to his two dependent children, the deputy commissioner "multiplied the daily wage [4] which Ellis was receiving at the time of his injury by three hundred and divided the result by fifty-two to arrive at the weekly wage." "The method adopted by the deputy commissioner would fix his annual earnings at $1,104, or more than twice the amount of his annual earnings as shown by the evidence." The Circuit Court of Appeals in reversing the District Court ruled that the deputy commissioner erred in his determination of the average weekly wage of decedent, the court stating: . "Where the employment is intermittent or discontinuous in its nature, multiplying the average daily wage paid during employment by three hundred would give as annual earnings a sum far in excess of the actual earning power of the employee, and consequently that method of determining average annual earnings cannot reasonably be applied and the method prescribed by section (c) must be followed."

In Continental Casualty Co. v. Lawson (C.C.A. 5th, 1933) 64 F.(2d) 802, 803, a

proceeding under the Longshoremen's Act, the employee, Roberts, a carpenter, was injured while repairing a tugboat on a marine railway. Roberts "was a first-class carpenter, but did not have a steady job. During the winter months he was able to secure reasonably regular employment in a boatyard, but during the dull summer season he was usually laid off with other carpenters." The deputy commissioner found that "during the year immediately preceding the date of injury he had been paid by one employer about $500, and by two others small amounts which were not stated." He made an award "based on the annual earnings, amounting to $1,700, of another employee of the same class whose employment was practically continuous." This award purported to be made under section 10(c). In reversing the District Court (2 F.Supp. 459) which affirmed the award, the Circuit Court of Appeals ruled that since the employee was unable to secure employment during substantially the whole of the year immediately preceding his injury, the deputy commissioner "correctly found that the amount of the award should be determined under § 10(c)." The court then said: "But instead of basing his award on the earnings of the claimant, the deputy commissioner based it upon the higher earnings of an employee of the same class who enjoyed regular employment. We think this was error, and that the earnings of the claimant himself and not of another employee must be used in arriving at the amount of compensation to be allowed. 'Earning capacity,' as used in this subsection, means willingness to work considered in connection with opportunity to work."

Considered in the light of the foregoing cases, we are of the view that if the injured employee shall not have worked in the employment in which he was working at the time of the injury during substantially the whole of the year immediately preceding his injury, the method provided by section 10(b) may be employed only when it can "reasonably and fairly be applied," and that if it "can not reasonably and fairly be applied" section 10(c) is applicable. The provisions of (c) qualify the provisions of (b) to the same extent as if incorporated therein. The aim of the statute is to award compensation by using as the basis therefor a sum which "shall rea-

---

[4] The District Judge stated that at the time of his death decedent was earning $3.68 a day. 56 F.(2d) 212, 216.

sonably represent the annual *earning capacity* of the injured employee in the employment in which he was working at the time of the injury." ' Section 10(c). Earning capacity "means fitness and readiness and willingness to work, considered in connection with opportunity to work; and fitness and opportunity must go hand in hand." Marshall v. Andrew F. Mahony Co. (C.C.A. 9th) 56 F.(2d) 74, 78.

[5] In the present case the evidence discloses that the "regular" carpenters or employees worked every day and received $11 per day or $55 per week of 5 working days; in other words, $2,860 per year consisting of 260 working days. This was the basis of the award. But Bootman was never employed as a "regular" employee or carpenter; on the contrary, from 1928 he had been employed only as an "extra" carpenter or employee. At no time had he worked during substantially the whole of a year, although in 1928 he worked 190 days and in 1929 he worked 219 days. Following the employment during those two years a hiatus exists in the evidence as to his employment during 1930 and 1931. In 1932 he was employed 64 days and earned $704.60; and in 1933 earned $1,213.50 for 110 days. In 1934, the year preceding his injury, he worked until May 5th, earning $565.50 for 51 days, although during that period there were in fact about 90 working days (based on 5 days per week); from May 5th to July 3d of that year, a period of about 40 working days, he was unemployed; and from July 3d until December 27, 1934, he earned $986.25 for 90 days, although in that period there were about 120 working days. From December 27, 1934, until May 18, 1935, a period of more than 4½ months, appellee Bootman "had no employment."

Thus the evidence discloses that there are two classes of union carpenters, i. e., those whose employment is regular and steady, and those whose employment is intermittent or discontinuous. Bootman, an "extra carpenter," was in the latter class.

First, does the sum used by the deputy commissioner as the basis for his award "reasonably represent the annual earning capacity of the injured employee in the employment in which he was working at the time of injury"? Second, can the method employed by the deputy commissioner be applied "reasonably and fairly"? The answers to both questions must be in the negative. The deputy commissioner used the average daily wage of a "regular" carpenter who was employed every day of the year as the basis for computing the average weekly wage of an "extra" carpenter who during each of the three years immediately preceding his injury was employed less than 150 days. Obviously such employment is intermittent or discontinuous. "Where the employment is intermittent or discontinuous in its nature, multiplying the average daily wage paid during employment by three hundred would give as annual earnings a sum far in excess of the actual earning power of the employee, and consequently that method of determining average annual earnings cannot reasonably be applied and the method prescribed by section (c) must be followed." Baltimore & O. R. Co. v. Clark (C.C.A. 4th) 59 F.(2d) 595, 599.

Since we are of the view that the deputy commissioner should have applied section 10(c), it seems advisable to point out a marked difference in subdivisions (b) and (c). In (b) the determination of the average annual earnings is definitely fixed at 300 times the average daily wage or salary "which an employee of the same class working substantially the whole of such immediately preceding year in the same or in similar employment in the same or a neighboring place shall have earned in such employment during the days when so employed." In (c) the determination of the average annual earnings is reached by applying a formula which gives the deputy commissioner a degree of latitude in arriving at his conclusion; that is, the prime and foremost consideration is that he shall arrive at a sum which "shall reasonably represent the annual earning capacity of the injured employee in the employment in which he was working at the time of the injury"; and in reaching this sum he shall have "regard to the previous earnings of the injured employee and of other employees of the same or most similar class, working in the same or most similar employment in the same or neighboring locality." In the last analysis, the sum must be such as "shall reasonably represent the annual earning capacity of the injured employee."

The decree is reversed and the cause remanded, with instructions to issue an injunction setting aside the compensation order and directing the deputy commissioner to award compensation to appellee Bootman, using as the basis for his average annual earnings such sum as "shall

*reasonably* represent the annual *earning capacity* of the injured employee in the employment in which he was working at the time of the injury," having regard to "the previous earnings of the injured employee and of other employees of the same or most similar class, working in the same or most similar employment in the same or neighboring locality," as provided by section 10(c).

Reversed and remanded.

---

[1] Longshoremen's and Harbor Workers' Compensation Act (chapter 509, 44 Stat. 1424, as amended by the Act of May 26, 1934, c. 354, 48 Stat. 806, 33 U.S.C.A. § 901 et seq.) made applicable to the District of Columbia as a workmen's compensation law by the Act of May 17, 1928 (chapter 612, 45 Stat. 600, D.C. Code, title 19, §§ 11, 12, 33 U.S.C.A. § 901 note).