614 F.2d 572
 Henry C. STRAND, Petitioner,
Director, Office of Workers' Compensation Programs, United
States Department Of Labor, Intervening Petitioner,
v.
HANSEN SEAWAY SERVICE, LTD. and U.S. Fidelity & Guaranty
Company, Respondents.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Petitioner,
Henry C. Strand, Intervening Petitioner,
v.
HANSEN SEAWAY SERVICE, LTD. and U.S. Fidelity & Guaranty
Company, Respondents.
 Nos. 79-1309, 79-1350.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 26, 1979.
Decided Jan. 31, 1980.
 
 Gilbert T. Renaut, U.S. Dept. of Labor, Washington, D.C., Albert J. Goldberg, Milwaukee, Wis., for petitioner and intervening-petitioner.
 Harney B. Stover, Jr., Milwaukee, Wis., for respondents.
 Before SWYGERT, Circuit Judge, WISDOM, Senior Circuit Judge,[1] and TONE, Circuit Judge.
 SWYGERT, Circuit Judge.
 
 
 1
 This appeal involves the interpretation of section 10(c) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 et seq., as amended. Petitioner, Henry C. Strand, was injured while working as a longshoreman at the docks of the Milwaukee Harbor. He petitions for review of the decision of the Benefits Review Board, United States Department of Labor, awarding disability compensation pursuant to the Longshoremen's and Harbor Workers' Compensation Act, and he challenges the statutory method employed by the Board in determining his average weekly wages for the purposes of calculating his amount of compensation. We affirm the decision of the Board, but we remand for a recalculation of the award to include the $380.00 earned during the off-season and the $100.00 error in the calculation of petitioner's annual earnings prior to his injury.
 
 
 2
 * Petitioner was employed by Hansen Seaway Services, Ltd. (respondent)[2] to work at the docks of the Port of Milwaukee. Due to climatic conditions, the Milwaukee Harbor operates for thirty-six weeks of the year. During the remaining sixteen weeks from December through March, the longshoremen draw unemployment compensation or, occasionally, obtain warehouse work. On August 26, 1974 petitioner was injured while on the job.[3] As a result of the injury, he was temporarily totally disabled for a period of eighteen weeks. Thereafter he filed a claim with the Department of Labor for compensation under the Longshoremen's Act. A hearing was held before an Administrative Law Judge on March 15, 1977. The judge attempted to apply the computation formula in section 10(a) in determining petitioner's rate of compensation on the basis that the claimant was employed during substantially the entire employment year thirty-six weeks prior to his injury.[4] The question is, did he do it correctly?The method for computing the amount of weekly disability compensation payable for a temporary total disability is found in 33 U.S.C. §§ 908, 910. It is a three-step process: first, the claimant's average annual earnings are computed pursuant to either subsection (a), (b), or (c) of section 910.[5] Second, the average annual earnings are divided by fifty-two to arrive at the claimant's average weekly wage, 33 U.S.C. § 910(d). Third, the average weekly wage is divided by two-thirds to reach the weekly rate of compensation, 33 U.S.C. § 908(b). The record discloses that during the year prior to his injury, petitioner worked thirty-six weeks (or 252 days) for which he was paid $11,431.86.[6] Pursuant to section 10(a), the Administrative Law Judge first calculated his average annual earnings to be.$13,608.00: 300 times average daily wage of $45.36 ($11,431.86 divided by 252 days). The judge next determined Strand's average weekly wage, pursuant to section 10(d), was $261.70 ($13,608.00 divided by fifty-two). The compensation rate totaled two-thirds of $261.70 or $174.47 per week. Both the employee and the employer appealed the judge's determinations of the average weekly wage.
 
 
 3
 In disagreement with the Administrative Law Judge, the Board held that section 10(c) of the Act should be applied to petitioner's claim, stating "10(a) should not be used in a case where the employment is seasonal." Accordingly, having calculated petitioner's claim under section 10(c), the Board held that the average weekly wage was $229.84. This figure was arrived at by dividing Strand's annual earnings in the year prior to the injury ($11,431.86) by fifty-two, pursuant to section 10(d).
 
 II
 
 4
 Petitioner asserts that the Administrative Law Judge correctly used section 10(a) in computing the average weekly wage. His position is that, considering the seasonal limitation on the operations of the Milwaukee Harbor, he was employed during substantially the entire employment year for dockworkers prior to his injury.
 
 
 5
 In reviewing awards of the Board, courts "generally must defer to the Board both in its factfinding capacity . . . and in its role as interpreter of the Act . . . ." National Steel & Shipbuilding Co. v. Bonner, 600 F.2d 1288, 1292 (9th Cir. 1979) (citations omitted). On appeal, Board rulings will not be disturbed unless it can be demonstrated "that they are unsupported by substantial evidence . . . or that they are not in accord with the law . . . or that they are irrational . . . ." Todd Shipyards v. Director, Office of Workers' Compensation, 545 F.2d 1176, 1178-79 (9th Cir. 1976) (citations omitted). We affirm the Board's decision that the computation method under section 10(c), instead of under section 10(a), is to be used in this case because petitioner was engaged in seasonal employment.
 
 
 6
 The Act does not expressly provide for seasonal employment. Both the legislative history and judicial interpretation of the Act, however, support the Board's finding that section 10(c) was to be used in calculating petitioner's claim. An excerpt from the legislative history supporting section 10(c) is illustrative:
 
 
 7
 This subsection in the present law is used where the employment itself, in which the injured employee was engaged when injured, does not afford a full year of work. . . . Thus, subsection (c) applies to seasonal, intermittent, discontinuous, and like employment which affords less than a full workyear or workweek.
 
 
 8
 S.Rep.No.1315, 80th Cong., 2d Sess., reprinted in (1948) U.S.Code Cong.Serv. pp. 1979, 1982. In interpreting the Act, courts have consistently held that sections 10(a) and (b) apply to continuous, full-time employment, whereas section 10(c) is to be applied to intermittent and irregular employment. See, e. g., White v. O'Hearne, 338 F.2d 464, 466 (4th Cir. 1964), cert. denied, 380 U.S. 973, 85 S.Ct. 1331, 14 L.Ed.2d 269 (1965); Marshall v. Andrew F. Mahony Co., 56 F.2d 74, 78 (9th Cir. 1932).
 
 
 9
 In light of our recent decision in Tri-State Terminals, Inc. v. Jesse, 596 F.2d 752 (7th Cir. 1979), there is no doubt that longshore work at a seasonal port, such as in this case, is work that is intermittent and irregular in nature. Tri-State Terminals involved facts similar to the ones at bar. There two longshoremen, who had worked when employment was available at the Port of Burns Harbor, Indiana, filed claims for work-related injuries under the Longshoremen's Act. Burns Harbor is a cold water port, such as in this case, and, thus, is only in operation for approximately thirty weeks of the year. Because of the "intermittent and discontinuous nature of the longshore work at Burns Harbor," section 10(c) of the Act was used by the Administrative Law Judge to calculate the claimants' compensation rate. Both the Board and this court agreed with the judge's determination. Id. at 754, 757-58. Although the precise issue in that case was whether section 10(c) allows the computation of disability benefits to be based in part on post-injury earnings of a claimant's co-workers, the court's interpretation of section 10 is instructive:
 
 
 10
 Three methods for determining average annual earnings are contained in § 10. See 33 U.S.C. §§ 910(a), (b) and (c). Sections 10(a) and (b) generally apply if the claimant is a full-time employee. However, where the work is discontinuous and intermittent, as it was at Burns Harbor for both employees, all parties agreed that § 10(c) provides the appropriate method for calculating average annual earnings. See White v. O'Hearne, 338 F.2d 464, 466 (4th Cir. 1964), cert. denied, 380 U.S. 973, 85 S.Ct. 1331, 14 L.Ed.2d 269 (1965); Johnson v. Britton, 110 U.S.App.D.C. 164, 165-68, 290 F.2d 355, 356-59 ((D.C. Cir.),) cert. denied, 368 U.S. 859, 82 S.Ct. 99, 7 L.Ed.2d 56 (1961); Marshall v. Andrew F. Mahony Co., 56 F.2d 74, 78 (9th Cir. 1932); S.Rep.No.1315, 80th Cong., 2d Sess., reprinted in (1948) U.S.Code Cong.Serv. pp. 1979, 1982.
 
 
 11
 Tri-State Terminals, supra, 596 F.2d at 754-55 (footnote omitted).
 
 
 12
 This court's analysis of section 10 is buttressed by Marshall v. Andrew F. Mahony Co., supra. There the Ninth Circuit was faced with the question of which method of calculation in section 10 should be applied to the claim of an injured longshoreman who worked whenever work was available (which was only 182 days during the year). In affirming the district court's holding that section 10(c) should be applied to the case, the court concluded:
 
 
 13
 To arrive at its proper meaning and application, section 10 (33 U.S.C.A. § 910) must be taken in its entirety and its true meaning be ascertained by giving due weight and consideration to all parts of the section in the light of the general aims and objects of the statute taken as a whole. The section does not provide that every case must be measured by subdivisions (a) or (b) if it be possible to force the transaction into the formulae which those subdivisions prescribe and that subdivision (c) is to be applied only to cases which cannot be measured by (a) or (b). On the contrary, it provides that subdivision (c) is to be employed whenever (a) or (b) cannot reasonably and fairly be applied. The numerous authorities discussed and cited by Judge Neterer in his opinion establish overwhelmingly that subdivisions (a) and (b) cannot be reasonably and fairly applied to an industry where employment is casual, irregular, seasonal, intermittent, and discontinuous. Surely it is not reasonable or fair to apply subdivisions (a) or (b) when to do so would result in ascertaining a mere theoretical earning capacity, having no regard to the actual facts of the case, but which would award arbitrarily to an injured laborer disability compensation in excess of what he was able to earn if at work, as shown by earnings, as in this case, covering a period of 3 years next preceding his injury. Compensation acts, to be within constitutional limits, must not be arbitrary, unreasonable, or fundamentally unjust or oppressive.
 
 
 14
 Id. at 78.
 
 
 15
 In light of these precedents, petitioner's argument that the Board erred in applying section 10(c) to this case cannot be accepted.
 
 III
 
 16
 If section 10(c) is applicable here, petitioner argues, that the Board, nonetheless, erred in failing to include the amount he received from state unemployment compensation as part of his "average annual earnings" in computing his compensation award. With the exception of the dissent of Member Miller, the petitioner cites no authority to support his position. On the other hand, respondents point to the decisions of this court and others which have held that amounts received from state employment compensation are not defined as "earnings."
 
 
 17
 In NLRB v. Marshall Field & Co., 129 F.2d 169, 171 (7th Cir. 1942), we stated:
 
 
 18
 Only by distorting the English language could we say that unemployment benefits are "earnings." The word "earnings" denotes an "economic good to which a person becomes entitled for rendering economic service." Webster's New International Dictionary, 2d Ed., unabridged 1937. See also National Labor Relations Board v. Brashear Freight Lines, Inc., 8th Cir., 127 F.2d 198; Words and Phrases, Perm.Ed., Earnings, Volume 14, page 31. The employees concerned did not receive the unemployment benefits in return for services rendered, and the amounts so received did not constitute "earnings" within the meaning of the order. Consequently the order did not authorize their deduction.
 
 
 19
 The Supreme Court specifically affirmed the rationale employed by this court. Marshall Field & Co. v. NLRB, 318 U.S. 253, 255, 63 S.Ct. 585, 87 L.Ed. 744 (1943). Although Marshall Field concerned the question of whether "net earnings" offsetting a backpay award to employees who were discriminatorily discharged should include state unemployment compensation payments, we believe the definition of earnings in that case is applicable here. See, e. g., Hoyer v. United Dressed Beef Co., 67 F.Supp. 730, 734 n.1 (S.D.Cal.1946) (definition of earnings in Marshall Field applicable in holding that serviceman's readjustment payments from federal government under former section 696d of the Servicemen's Readjustment Act, 38 U.S.C. § 696d, are not "earnings" for which the employer should receive credit). Accordingly, we affirm the finding of the Administrative Law Judge that amounts received from unemployment compensation do not constitute "earnings" in determining petitioner's compensation award under section 10(c).
 
 
 20
 Finally, we note that the Board, in calculating petitioner's average weekly wage under section 10(c), divided his actual earnings in the year prior to the injury $11,431.86 by fifty-two. The Board's computation is erroneous on two grounds. First, the record discloses that the correct total for Strand's actual earnings as a dockworker is $11,531.86. Second, in determining "annual earning capacity" under section 10(c), the Board failed to include the amount of $380.00 which petitioner earned from other employers while the port was closed.
 
 
 21
 The case is reversed and remanded to the Board for a modification of its award.[7]
 
 
 
 [1]
 The Honorable John Minor Wisdom, United States Senior Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [2]
 Respondent's insurance carrier, U. S. Fidelity & Guaranty Company, is also a respondent in this case
 
 
 [3]
 Strand suffered a second injury in the course of his employment in April 1975. The amount of compensation which Strand received because of this second injury is not at issue here
 
 
 [4]
 Section 10(a) of the Act reads:
 If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same or another employer, during substantially the whole of the year immediately preceding his injury, his average annual earnings shall consist of three hundred times the average daily wage or salary for a six-day worker and two hundred and sixty times the average daily wage or salary for a five-day worker, which he shall have earned in such employment during the days when so employed.
 
 
 [5]
 Sections 10(b) and (c) provide:
 (b) If the injured employee shall not have worked in such employment during substantially the whole of such year, his average annual earnings, if a six-day worker, shall consist of three hundred times the average daily wage or salary, and, if a five-day worker, two hundred and sixty times the average daily wage or salary, which an employee of the same class working substantially the whole of such immediately preceding year in the same or in similar employment in the same or a neighboring place shall have earned in such employment during the days when so employed.
 (c) If either of the foregoing methods of arriving at the average annual earnings of the injured employee cannot reasonably and fairly be applied, such average annual earnings shall be such sum as, having regard to the previous earnings of the injured employee in the employment in which he was working at the time of the injury, and of other employees of the same or most similar class working in the same or most similar employment in the same or neighboring locality, or other employment of such employee, including the reasonable value of the services of the employee if engaged in self-employment, shall reasonably represent the annual earning capacity of the injured employee.
 
 
 [6]
 The court notes that the correct total for petitioner's actual earnings for the year prior to his injury is $11,531.86
 
 
 [7]
 Petitioner does not suggest that his actual earnings for 1973-74, upon which the Board calculated the compensation award under Section 10(c), are not a fair and reasonable approximation of his earning capacity. Under these circumstances, we reject the argument of the Director of the Office Workers' Compensation Programs, United States Department of Labor, that the case be remanded to the Administrative Law Judge for a redetermination of petitioner's earning capacity