Manuel PALACIOS, Petitioner,

v.

CAMPBELL INDUSTRIES,

and

Director, United States Department of Labor Office of Workers' Compensation Programs, Respondents.

No. 78–3358.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 17, 1980.

Decided Dec. 4, 1980.

Donald W. Zellmann, Brundage & Zellmann, San Diego, Cal., for petitioner.

Donald M. Clark, National City, Cal., for respondents.

Before PREGERSON, FERGUSON and NORRIS, Circuit Judges.

PREGERSON, Circuit Judge:

Manuel Palacios appeals a decision of the Benefits Review Board (BRB) affirming an administrative law judge's determination of disability benefits under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901 *et seq.* Palacios challenges the selection and application of the statutory method used to calculate the average annual earnings upon which his disability award is based.

On September 6, 1973 at San Diego, California, Palacios was hired as an extra shipyard painter by Campbell Industries. He was assigned to work on a ship being repaired under contract with the United

States Navy. Campbell hired extra painters whenever it had repair projects that exceeded the work capacity of its permanent staff. Palacios worked as a painter for about five weeks before leaving the job on October 29, 1973, because of a disabling allergic reaction to paint fumes. Other extra painters hired for the same project worked until December 18, 1973, when the project was completed. Had Palacios not suffered injury, he also would have been terminated on that date because he lacked seniority for transfer to the permanent painting staff. Campbell again hired extra painters in July 1975.

While employed at Campbell, Palacios, as a member of the union that supplied Campbell and other employers with painters, earned $233.00 per week. Before working as a painter for Campbell in 1973, Palacios was an upholsterer earning $139.96 per week.

Section 10 of the LHWCA, 33 U.S.C. § 910, provides three methods for computing a claimant's average annual earnings upon which a disability award is based. The method provided in section 10(a) applies where an injured full-time employee has "worked in the employment in which he was working at the time of the injury, whether for the same or another employer, during substantially the whole of the year immediately preceding his injury...." The parties agree that section 10(a) is inapplicable. The method provided in section 10(b) applies to an injured full-time employee who has not worked in the employment where the injury occurred during substantially the whole of the preceding year. Arguably this method could apply to Palacios since he had not worked in the employment where the injury occurred during substantially the whole year preceding the injury. The method provided in section 10(c) applies when "either of the foregoing methods of arriving at the average annual earnings of the injured employee cannot reasonably and fairly be applied...." Section 10(c) applies to intermittent and irregular employment, when application of the mathematical formulas provided in sections

10(a) or (b) would be unreasonable or unfair, or when insufficient evidence is presented at the hearing to permit proper application of section 10(a) or (b). *National Steel and Shipbuilding Co. v. Bonner*, 600 F.2d 1288, 1291 (9th Cir. 1979). In determining average annual earnings under Section 10(c), regard must be given to (1) the previous earnings of the injured employee in the job at which the employee was injured, and (2) previous earnings of similar employees, or (3) other employment of the injured employee. *Id.* at 1292.

The administrative law judge ruled that section 10(c) rather than section 10(b) governs the determination of Palacios's disability benefits. Applying section 10(c), the administrative law judge calculated average annual earnings by totaling the wages Palacios earned in 1973 as an upholsterer and as an extra painter through October 29, 1973, and then adding the amount Palacios would have earned at Campbell on the Navy project had he worked until December 18, 1973.

The administrative law judge, in concluding that section 10(c) governs the determination of Palacios's disability benefits, observed:

> While it appears that the work was not steady and permanent, at least for a painter lacking seniority, neither were there fixed, regular periods of inactivity that are characteristic of longshoring work in ports that are closed during part of the year. It is not clear from the record that the claimant could not have worked as a painter for other employers, or for this employer at some date before its next large Navy contract in 1975, or, indeed, that he could not have acquired enough seniority at some future time to have been kept on permanently.

Despite this observation, the administrative law judge concluded that the possibility that Palacios would obtain permanent or continuous future employment as a painter was insufficient to support computation of his disability benefits under section 10(b).

We conclude, on the basis of the record as it now stands, that the adminis-

trative law judge erred in applying section 10(c). The record is inconclusive on whether Palacios's future employment opportunities were continuous or intermittent. No evidence was presented regarding employment opportunities, through the union hiring halls, in San Diego after December 18, 1973 for painters having Palacios's degree of union seniority. Such evidence is central to the question whether section 10(b) or 10(c) applies, because that determination is based on the nature of the employment and of the industry itself, not merely on the prior work record of a particular claimant. *See O'Hearne v. Maryland Casualty Co.*, 177 F.2d 979, 980–81 (4th Cir. 1949). Accordingly, this matter is remanded to the administrative law judge for further findings and evidence on the continuous or intermittent nature of the painting industry in San Diego after December 18, 1973 for union painters with Palacios's degree of seniority.

If the administrative law judge determines, after further investigation, that employment in the painting industry in San Diego during the relevant period was intermittent and that therefore section 10(c) is applicable, a further adjustment of Palacios's disability benefits under section 10(c) is required. The governing provision of section 10(c) states that "average annual earnings shall be such sum as . . . shall reasonably represent the annual earning capacity of the injured employee." In determining earning capacity under section 10(c), the actual wages earned by the employee are not controlling. *National Steel and Shipbuilding Co. v. Bonner*, 600 F.2d at 1292. Moreover, "[i]t is manifest that the prime objective of § 10(c) was to insure that compensation awards would be based on accurate assessments of the claimants' earning capacity." *Tri–State Terminals, Inc. v. Jesse*, 596 F.2d 752, 756 (7th Cir. 1979). In determining earning capacity under section 10(c), it is necessary to consider the employee's "ability, willingness and opportunity to work." *Id.* at 757; *see also Fireman's Fund Insurance Co. v. Van Steene*, 120 F.2d 548, 549 (9th Cir. 1941). A determination of earning capacity does not preclude consideration of circumstances existing after the date of injury where previous earnings of the disabled employee do not realistically reflect his or her true earning potential. *See Tri–State Terminals, Inc. v. Jesse*, 596 F.2d at 757–58.

In *National Steel and Shipbuilding Co. v. Bonner, supra*, the administrative law judge, in applying section 10(c), calculated average annual earnings by considering only wages earned by Bonner during the thirteen–week period she worked at National Steel before her injury. In affirming that award, this court stated:

> The trier can reasonably draw an inference that but for the injury, the worker would have continued to earn the new, higher wages. It would make no sense to hold as a matter of law that, because this pipefitter was hurt shortly after she started her new job, the employer is entitled to base her disability compensation on her old [less remunerative] babysitting wages.

*Id.* at 1293.

In determining average annual earnings under section 10(c), the administrative law judge failed to consider Palacios's potential earning capacity as a union painter, but for his disability, after December 18, 1973. The record does not reflect any investigation of the employment potential of painters having Palacios's degree of union seniority nor does the record reflect the availability of painting work, through the union hiring hall, in the San Diego area after December 1973. Even if that employment potential is intermittent, it is still relevant to a determination of benefits under section 10(c). Accordingly, if the administrative law judge finds, after further investigation, that section 10(c) does apply, the determination of disability benefits under that section must reflect any intermittent employment as a union painter that might have been available to Palacios, but for his injury, after December 18, 1973.

REVERSED AND REMANDED.