**Vivian L. WALKER, Petitioner,**

**v.**

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY and Director, Office of Workers' Compensation Programs, U.S. Department of Labor, Respondents.**

**No. 85–1639.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 22, 1986.

Decided June 13, 1986.

---

John C. Duncan, III, Washington, D.C., for petitioner.

Thomas G. Hagerty, Washington, D.C., for respondents.

Before WALD and BUCKLEY, Circuit Judges, and EDWARD D. RE,* Chief Judge, United States Court of International Trade.

Opinion PER CURIAM.

PER CURIAM:

Vivian Walker asks us to overturn the Benefit Review Board's ("BRB") decision that her disability benefits under the Long-shoremen's and Harbor Worker's Compensation Act, as amended, 33 U.S.C. §§ 901 *et seq.*, extended by the District of Columbia Workmen's Compensation Act, 36 D.C.Code § 301 *et seq.* (hereinafter "the Act"), are to be determined by looking at the salary of her pre-injury job *as of the date she became disabled.* Walker argues instead that the Administrative Law Judge ("ALJ") had been correct in calculating her disability benefits by deducting her current wages from what she would have been earning in her prior job *as of the time of the hearing* had the injury not taken place. Because

we find Walker's and the ALJ's approach to be contrary to the statutory language, we affirm the BRB's decision.

## I. BACKGROUND

Vivian Walker suffered permanent partial disability as a result of being assaulted while operating a bus for the Washington Metropolitan Area Transit Authority ("WMATA"). Since her disability is not one of those listed under 33 U.S.C. § 908(c)(1)–(20), which provides specific benefits for various types of injuries, Ms. Walker's case falls under § 908(c)(21). That clause provides that "compensation shall be 66⅔ per centum of the difference between the average weekly wages of the employee and the employee's wage earning capacity thereafter in the same employment or otherwise, payable during the continuance of partial disability." The key terms in the calculation are "average weekly wages," and "wage earning capacity."

The Act provides that a claimant's post-injury "wage earning capacity" is determined by actual post-injury earnings "if such earnings fairly and reasonably represent his wage-earning capacity." 33 U.S.C. § 908(h). If, however, the claimant "has no actual earnings or his actual earnings do not fairly and reasonably represent his wage-earning capacity" the Act instructs the deputy commissioner to look at a variety of factors to determine the claimant's reasonable wage-earning capacity in his partially disabled state. *See generally Randall v. Comfort Control, Inc.,* 725 F.2d 791, 797–98 (D.C.Cir.1984) (discussing some relevant factors in determining whether claimant's current earnings represent his true wage-earning capacity).

Benefits under § 908(c)(21) are only available, of course, if the claimant's current wage-earning capacity is less than his average weekly wages in his pre-injury job.[1] In defining "average weekly wages,"

---

* Sitting by designation pursuant to 28 U.S.C. § 293(a).

1. There are, however, exceptional circumstances which can warrant a finding of disability even

where there is no clear present economic harm. *See* Randall v. Comfort Control, Inc., 725 F.2d 791, 799–800 (D.C.Cir.1984) (describing *de minimis* award to keep claim alive).

§ 910 first sets forth the general rule that "[e]xcept as otherwise provided in this chapter, the average weekly wage of the injured employee *at the time of the injury* shall be taken as the basis upon which to compute compensation." *Id.* (emphasis added). The statute then goes on to list the three alternative "bas[es] upon which to compute compensation." First, if the employee worked in the employment during "substantially the whole of the year immediately preceding his injury," his annual salary is computed by multiplying his actual daily wage by 260 for a 5-day-a-week employee, and by 312 for a 6-day-a-week employee. 33 U.S.C. § 910(a). Second, if the employee has not been engaged for substantially the whole of the year, annual salary is computed by multiplying the daily salary of what "an employee of the same class working substantially the whole of the immediately preceding year ... shall have earned in such employment during the days when so employed." 33 U.S.C. § 910(b). Finally,

> if either of the foregoing methods of arriving at the average annual earnings of the injured employee cannot reasonably and fairly be applied, such average annual earnings shall be such sum as, having regard to the previous earnings of the injured employee in the employment in which he was working at the time of the injury, and of other employees of the same or most similar class working in the same or most similar employment in the same or neighboring locality, or other employment of such employee, including the reasonable value of the services of the employee if engaged in self-employment, shall reasonably represent the annual earning capacity of the injured employee.

33 U.S.C. § 910(c).

The parties stipulated that Walker's weekly salary as a bus driver at the time of

the injury was $273.08. The parties also agreed that Walker's current job as a clerk-typist was paying $214.40 as of the date of Walker's injury on the bus.[2] Comparing these figures shows a loss in earning capacity of $58.68, two-thirds of which Walker would be compensated. Walker, however, argued that the comparison should have focused on the comparative wage scales as of the date of the hearing, since those would more accurately reflect her true losses. Toward that end, she submitted evidence that another bus driver who entered the WMATA training program in her class was now earning $11.34 an hour, while Walker was earning only $8.015 per hour. Under this approach, her lost earning capacity was $133 per week.

The ALJ adopted Walker's approach, but the BRB reversed. The Board explained that the ALJ's method of calculation has been continuously "rejected by the Board because it is contrary to the clear language of the Act, which refers to the average weekly wage at the time of the injury." Joint Appendix at 96.

## II. Discussion

We think it clear from the statute that "average weekly wages" are to be typically discerned by looking at the claimant's, or similar employees' wages, for a period *prior to the injury. See* 33 U.S.C. §§ 910(a), 910(b). It is only when those methods "cannot reasonably and fairly be applied" that the Board is to take into account the factors listed in § 910(c).[3] *See generally National Steel & Shipbuilding Co. v. Bonner,* 600 F.2d 1288, 1291–92 (9th Cir. 1979). Depending on the circumstances that necessitate the § 910(c) inquiry, it may be appropriate to look at salary rates both before and after the injury. *See, e.g., Tri-State Terminals, Inc. v. Jesse,* 596 F.2d 752 (7th Cir.1979); *Bonner,* 600 F.2d at 1293. Here, however, we hold that there

---

**2.** In order to make a fair comparison between wages, the Board looks to the amount the post-injury job paid at the time of the claimant's injury. This allows the Board to compare the wages without worrying about the effect of inflation. *See infra* n. 5.

**3.** Since the ALJ modified Walker's "average weekly wages"—not her post-injury earning capacity—the relevant statute is § 910(c), not § 908(h).

was no reason on the record *in this case* to warrant consideration of the post-injury salary scale of Walker's pre-injury occupation.

Section 910(c) was designed to avoid the "otherwise harsh results" that would follow were an employee's wages invariably calculated simply by looking at the previous year's earnings. *See* S.Rep. No. 1315, 80th Cong., 2d Sess. 6 (1948), *reprinted in* [1948] U.S.Code Cong. Serv. 1979, 1982. The classic example is where the employee's occupation is inherently intermittent or discontinuous, in which case mechanical application will be unfair to either the employer or employee. For example, if the type of work is such that there is never more than 180 days available in a calendar year, applying the 260-day formula of §§ 910(a) or (b) would be unfair to the employer. *See, e.g., Johnson v. Britton,* 290 F.2d 355, 357–59 (D.C.Cir.), *cert. denied,* 368 U.S. 859, 82 S.Ct. 99, 7 L.Ed.2d 56 (1961). On the other hand, if the work in one year is slow but far busier in the next year, it would be unfair to the employee to look only at the exact one year period prior to the injury, or to exclude wages from other jobs the employee held during the slow period. *See, e.g., Tri-State,* 596 F.2d at 755; *O'Hearne v. Maryland Casualty Co.,* 177 F.2d 979, 982 (4th Cir.1949). Similarly, this court has held that where an employee's physical capacity to work longer hours dramatically increased during the latter part of the one year period prior to the disability, it is appropriate to use § 910(c) in order to focus on the earnings just prior to the disability. *See Hastings v. Earth Satellite Corp.,* 628 F.2d 85, 95–96 (D.C.Cir.), *cert. denied,* 449 U.S. 905, 101 S.Ct. 281, 66 L.Ed.2d 137 (1980). Additonally, it is necessary to use § 910(c) when there is insufficient evidence with which to properly apply §§ 910(a) or (b). *See Bonner,* 600 F.2d at 1291.

■ In this case, it was indeed necessary to conduct the inquiry as to Walker's average weekly wages under § 910(c).[4] Since Walker had not worked for substantially the whole of the preceding year, § 910(a) was inapplicable. As for § 910(b), no employee of the "same class" could have worked for substantially the whole year, since the "class" in this case would have constituted those who had just completed training as Walker had. *See Bury v. Joseph Smith & Sons,* 13 B.R.B.S. 694, 696–98 (1981) (§ 910(b) does not apply where there are no similar employees who worked substantially entire year prior to injury). Moreover, as a recent graduate of WMATA's training program, it was appropriate to look only at Walker's salary as a driver, instead of considering her minimum wage salary as a trainee as well. *See* 2 Larson, *The Law of Workmen's Compensation* § 60.12(c) (1983).

■ The fact that § 910(c) is invoked, however, does not afford *carte blanche* as to the factors that are relevant in carrying out the § 910(c) inquiry. Here, § 910(c) was used only because there were no employees of the "same class" who had worked substantially the entire year, and because Walker's recent completion of the training program warranted examination of her post-training wages. Unlike cases involving exceptional circumstances relating to the intermittent nature of the work or the employee's capacity to work, Walker's case presented no cause for looking at factors other than her actual hourly rate prior to the injury. There was certainly nothing exceptional about the nature of her job that required examination of the post-injury trend in bus drivers' salaries. Walker's employment was a steady 40 hour work week, with the opportunity for some overtime. There is no evidence in the record that the rise in the salary of the bus driving job was attributed to any factors beyond inflation and typical raises based on seniority. To recognize these two factors as exceptional circumstances warranting consideration of the post-injury pay scale of the pre-injury job, would be to ignore the clear mandate of § 910, which provides

---

**4.** The parties apparently had this in mind when they stipulated that the wage was $270.38, 40 times Walker's hourly rate *on the date of the injury.*

that the salary for the period prior to the injury is the relevant figure, absent some extraordinary circumstance.[5]

 Thus, we agree with the BRB's longstanding interpretation of the statute as requiring, under ordinary circumstances, that "average weekly wages" be computed by looking at the salary scales prior to the time of the claimant's injury.[6] *See Bethard v. Sun Shipbuilding & Dry Dock Company,* 12 B.R.B.S. 691, 695 n. 2 (1980); *Tibbets v. Bath Iron Works Corp.,* 10 B.R.B.S. 245, 250 n. 2 (1979). Since this case presented no exceptional circumstances to warrant a departure from this principle, the decision of the BRB is

*Affirmed.*

5. In McCabe v. Sun Shipbuilding and Dry Dock Co., 602 F.2d 59 (3d Cir.1979), the Third Circuit reached what may be a contrary conclusion, holding that the "appropriate comparison should have been between the wages the claimant would have been earning had he remained [at his old job] and the wages he could have earned in another position." *Id.* at 63. It appears that the *McCabe* court's chief concern was that the BRB had compared the claimant's 1974 pre-injury wages with his 1976 post-injury wages and found that he was making more money in his new job. The BRB's analysis was obviously artificial since it failed to take into account the fact that the 1976 dollars were inflated. Subsequent to the decision in *McCabe,* the Board has taken to "factor[ing] out changes in wage levels by adjusting the post-injury wage rate back to the date of the injury." Pumphrey v. E.C. Ernst, 15 B.R.B.S. 327, 329 (1983); *see also* Turney v. Bethlehem Steel, 17 B.R.B.S. 232, 238 (1985); Tibbets v. Bath Irons Work Corp., 10 B.R.B.S. 245, 250 n. 2 (1979). Given this new, fairer approach it is not clear whether the *McCabe* court would insist that the comparison must be made between wage scales as of the time of the

hearing. To the extent that *McCabe* may have required that the pre-injury wages always be examined as of the time of the hearing, we believe it contrary to the statutory language, and decline to adopt it.

6. Beyond the clear statutory language that supports this result, there are significant policy justifications for conducting the comparison of wage scales as of the time of the injury. For example, if the comparison were done at the time of the hearing, there would be substantial incentives for one side or the other to delay the hearing as long as possible in order to take advantage of the increasing or decreasing disparity between the salaries of the pre-injury and post-injury jobs. Moreover, any effort to look at what the claimant might have eventually earned but for the injury necessarily involves considerable speculation. *See Hastings,* 628 F.2d at 96 ("An employer need not pay a claimant more than his current earnings on the speculative possibility that the claimant might have earned money in the future had injury not occurred.").