**Sam D. MATULIC, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS; Jones Stevedoring Co., Respondent.**

No. 96–70874.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 6, 1998.

Decided Sept. 8, 1998.

Mary Alice Theiler, Theiler, Douglas, Drachler & McKee, Seattle, WA, for petitioner.

Robert H. Madden, Madden & Crockett, Seattle, WA, for respondent.

Before: HUG, Chief Judge, REINHARDT, Circuit Judge, and REED,* District Judge.

Opinion by Judge REINHARDT; Dissent by Judge REED.

REINHARDT, Circuit Judge:

Sam D. Matulic injured his left arm while employed by Jones Stevedoring Company in Seattle, Washington. Objecting to the method used to calculate the amount of his permanent partial disability benefits under the Longshore and Harbor Workers' Compensa-

---

* The Honorable Edward C. Reed, Jr., Senior District Judge for the District of Nevada, sitting by designation.

tion Act ("LHWCA"), 33 U.S.C. § 901–50, he petitions for review of a decision of the Administrative Law Judge ("ALJ"). He also seeks review of the ALJ's denial of a penalty award, interest, and attorney's fees. We have jurisdiction under 33 U.S.C. § 921(c).

## BACKGROUND

Matulic began working as a longshoreman in 1963 and was based at the Port of Los Angeles until December 1988 when he moved to Seattle and began working for Jones Stevedoring Company. On September 13, 1989, he suffered a serious injury to his left elbow while on-the-job. He received treatment at the hospital and was unable to return to work until December 8. Jones Stevedoring voluntarily paid Matulic temporary total disability at the rate of $536.24 per week for the period of his recovery.

Matulic applied for permanent partial disability. During the preliminary negotiations in December 1990, the parties disagreed over the extent of Matulic's disability. They agreed to submit the matter to the Office of Workers Compensation Programs ("OWCP"). On June 24, 1991, without conducting an informal conference, the OWCP issued a written recommendation as to the extent of Matulic's disability and the amount of his average weekly wage. Despite the continuing requests of the parties, the informal conference was never held and the OWCP did not issue a final Compensation Order. In October 1993, the parties appeared before the ALJ.

On December 23, 1993, the ALJ issued an order with the following findings of fact and conclusions of law: 1) Matulic suffered a 5% permanent partial disability; 2) his average weekly wage was $834.05, resulting in a weekly compensation rate of $556.03; 3) Matulic was not entitled to § 914(e) penalties; 4) Matulic was not entitled to attorney's fees; 5) Matulic was not entitled to interest; and 6) Matulic was entitled to reimbursement of medically-related travel expenses. Matulic appealed the ALJ's decision to the Benefits Review Board. Because the Board failed to act within one year, the decision is deemed automatically affirmed under Public Law No. 104–134, 110 Stat. 1321–219 (1996). We now consider Matulic's petition for review.

## DISCUSSION

In cases in which the decision of the Administrative Law Judge is deemed affirmed by operation of Public Law No. 104–134, we review the decision for errors of law and for failure to adhere to the substantial evidence standard. *See Jones Stevedoring Co. v. Director, OWCP*, 133 F.3d 683, 687 (9th Cir.1997). In doing so, we recognize the "beneficent purposes and humanitarian nature of the Act." *Randall v. Comfort Control, Inc.*, 725 F.2d 791, 796 (D.C.Cir.1984). "All doubts are to be construed in favor of the employee in accordance with the remedial purposes of the [LHWCA]." *Odom Constr. Co. v. United States Dept. of Labor*, 622 F.2d 110, 115 (5th Cir.1980). As a final preliminary point, we note that, while Jones Stevedoring was not named as a party in Matulic's Petition for Review, it is a proper party and has standing to oppose Matulic's appeal. *See* 33 U.S.C. § 921(c); *see also, Ingalls Shipbuilding, Inc. v. Director, OWCP*, 519 U.S. 248, 117 S.Ct. 796, 804, 136 L.Ed.2d 736 (1997).

*I. Calculation of Matulic's Average Weekly Wage*

Matulic challenges the ALJ's method of calculating his "average weekly wage" at the time of the injury. Under the LHWCA, that average weekly wage is the key component used to determine Matulic's earning capacity, and therefore the amount of his benefits award. 33 U.S.C. § 910.[1] Section 910 of the Act sets forth three formulas for determining "average annual earnings," all using the 365 days preceding the injury as the measuring year. 33 U.S.C. § 910(a)-(c).[2]

---

1. Under 33 U.S.C. §§ 908(b), Matulic's temporary total disability award is two-thirds of his average weekly wage multiplied by the total number of weeks of the disability (approximately 12 weeks). Under 908(c)(1) and 908(c)(21), Matulic's permanent partial disability compensation is calculated by computing two-thirds of his average weekly wage, multiplying that value by the number of weeks specified for the loss of an arm, and multiplying that amount by the percentage of impairment to his arm (in this case, 5%). *See* 33 U.S.C. § 908.

2. 33 U.S.C. § 910(a), (b), (c) provide in pertinent part:

That figure is then divided by fifty-two to arrive at the average weekly wage. 33 U.S.C. § 910(d). At issue is whether Matulic's average annual earnings, and thus his average weekly wage, should have been calculated under § 910(a) or § 910(c). Matulic contends that the ALJ erred by employing the latter statutory provision rather than the former. He points out that § 910(a) is the presumptively proper method for calculating average weekly wage and must be employed unless it would be unfair or unreasonable to do so. Matulic asserts that in his case it would be neither unfair nor unreasonable to use the presumptively proper method. Jones Stevedoring disagrees, arguing that the ALJ was correct to employ § 910(c) because, in its view, Matulic would receive an unfairly high rate of compensation were § 910(a) deemed applicable.

Section 910(a) applies in cases in which the injured claimant "worked in the employment in which he was working at the time of the injury ... during substantially the whole of the year immediately preceding his injury." 33 U.S.C. § 910(a). Only if §§ 910(a) and (b) cannot "reasonably and fairly be applied" may the ALJ turn to § 910(c). 33 U.S.C. § 910(c). Under the method prescribed in § 910(a), average weekly wage is calculated by: 1) dividing the total earnings of the claimant during the fifty-two weeks preceding the injury by the number of days actually worked; 2) multiplying that figure by either 260 or 300, depending on whether the claimant worked a five- or six-day week (in this case, five); and 3) dividing that figure by fifty-two. *See* 33 U.S.C. §§ 910(a) and 910(d). By comparison, § 910(c), which serves as a "catch-all" provision if neither §§ 910(a) nor 910(b) applies, allows the ALJ to consider not only the claimant's previous earnings, but also earnings of employees in the same or similar class as the claimant and other employment by which the claimant may have generated income. *See* 33 U.S.C. § 910(c). Section 910(c) does not prescribe a fixed formula but requires the ALJ to establish a figure that "shall reasonably represent the annual earning capacity" of the claimant. 33 U.S.C. § 910(c). Under § 910(a), Matulic's average weekly wage was $1018.94; under § 910(c), it was determined by the ALJ to be $834.05.

The ALJ's decision to apply § 910(c) was based on his conclusion that Matulic would be overcompensated if his average weekly wage were calculated under § 910(a). The ALJ found that Matulic earned a total of $43,370.81 in the fifty-two weeks preceding his injury and that, during that year, he worked only 213 of the 260 possible working days. Noting that Matulic's annual earnings would be calculated at $52,941.20 if § 910(a) were applied, the ALJ found that § 910(a) would overestimate his annual earnings by treating him as if he had worked throughout the entire year when he had actually worked only 82% of the total possible working days in the measuring year. Citing our decision in *Duncanson–Harrelson Co. v. Director, OWCP*, 686 F.2d 1336 (9th Cir.1982), *vacated*

(a) If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same or another employer, during substantially the whole of the year immediately preceding his injury, his average annual earnings shall consist of three hundred times the average daily wage or salary for a six-day worker and two hundred and sixty times the average daily wage or salary for a five-day worker, which he shall have earned in such employment during the days when so employed.

(b) If the injured employee shall not have worked in such employment during substantially the whole of such year, his average annual earnings, if a six-day worker, shall consist of three hundred times the average daily wage or salary, and, if a five-day worker, two hundred and sixty times the average daily wage or salary, which an employee of the same class working substantially the whole of such immediate-ly preceding year in the same or in similar employment in the same or a neighboring place shall have earned in such employment during the days when so employed.

(c) If either of the foregoing methods of arriving at the average annual earnings of the injured employee cannot reasonably and fairly be applied, such average annual earnings shall be such sum as, having regard to the previous earnings of the injured employee in the employment in which he was working at the time of the injury, and of other employees of the same or most similar class working in the same or most similar employment in the same or neighboring locality, or other employment of such employee, including the reasonable value of the services of the employee if engaged in self-employment, shall reasonably represent the annual earning capacity of the injured employee.

*on other grounds,* 462 U.S. 1101, 103 S.Ct. 2446, 77 L.Ed.2d 1329 (1983), the ALJ concluded that the prospect of excessive compensation was a sufficient basis for finding that § 910(a) could not reasonably or fairly be applied.

We adopt the factual findings of the ALJ but conclude, as a matter of law, that § 910(a) could be reasonably and fairly applied in Matulic's case, even though his earning capacity would be based on an assumption that he would ordinarily work a number of days more than he worked during the measuring year. We do so buttressed by the knowledge that some "overcompensation" is built into the system institutionally. After giving due weight to the purposes and goals of the Act, we conclude that the ALJ's failure to apply § 910(a) was contrary to law.

As we have previously recognized:

When Congress amended section 910 of the Act in 1948 to reflect the five-day work week, it undoubtedly was aware that virtually no one in the country works every working day of every work week; there are many reasons including illness, vacations, strikes, unemployment, family emergencies, etc. We can infer that Congress knew that both subsections (a) and (b) would result in some overcompensation, but retained the 260–day factor for administrative convenience.

*Duncanson–Harrelson,* 686 F.2d at 1342. Due to the fixed formula Congress adopted under § 910(a), in most benefits cases there will be a degree of inaccuracy in the estimation of the worker's earning capacity-ordinarily the error will favor the worker and ordinarily there will be some overcompensation, at least in theory, although in other respects the statutory formula may benefit the employer.[3] Flexibility and the resolution of doubts in favor of the worker is the rule rather than rigid mathematical certainty.

■ The key to determining an injured worker's average weekly wage is the requirement that § 910(a) shall apply unless it would be unreasonable or unfair to do so.

*See* 33 U.S.C. § 910(c). The statute sets a high threshold and requires the application of § 910(a) or (b) except in unusual circumstances. Given the clear congressional intent to create an efficient and beneficent, though not entirely accurate, method of estimating a claimant's earning capacity, we conclude, as a matter of law, that a worker's receipt in future years of disability benefits computed on the basis of 18% more days (including vacation, holiday, and sick days) than he actually worked in the measuring year is not sufficient basis to find the § 910(a) presumption rebutted. Our conclusion is supported by the humanitarian purposes of the LHWCA and by our mandate to construe broadly its provisions so as to favor claimants in the resolution of benefits cases. *See Edwards v. Director, OWCP,* 999 F.2d 1374, 1375 (9th Cir.1993) (noting the "long-term remedial purpose of the LHWCA"); *Randall v. Comfort Control, Inc.,* 725 F.2d 791, 796 (D.C.Cir.1984); *Odom Constr. Co. v. United States Dept. of Labor,* 622 F.2d 110, 115 (5th Cir.1980) (declaring obligation to resolve all doubts in favor of employee). Thus, although there may be some theoretical (or possibly even actual) "overcompensation," the determination of Matulic's average weekly wage under § 910(a) would not result in an excessive or unfair result.

■ In *Duncanson–Harrelson* and other cases, courts have upheld the application of § 910(c) in lieu of § 910(a) primarily when the claimant has worked only a portion of the year. *See Johnson v. Britton,* 290 F.2d 355, 358 (D.C.Cir.1961); *Marshall v. Andrew F. Mahony Co.,* 56 F.2d 74, 75 (9th Cir.1932). In each of those cases, however, the percentage of days worked in the measuring year was substantially lower than in Matulic's case, and it was fair to conclude that the individual did not work throughout the full year. *See Duncanson–Harrelson,* 686 F.2d at 1343(75%); *Johnson,* 290 F.2d at 357(69%); *Marshall,* 56 F.2d at 75(61%). In *Duncanson–Harrelson,* we noted that the

---

**3.** For example, application of the fixed formula benefits the employer in cases in which the statutory maximum compensation rate serves to limit the compensation for a high earnings wage earner. Title 33 U.S.C. § 906(b)(1) sets a maximum compensation rate of $636.24 regardless of the claimant's average weekly wage. In the instant case, Matulic's average weekly wage, calculated under §§ 910(a) and 910(d), yields a compensation rate of $678.73 but would be limited to $636.24 under § 906(b)(1).

point at which the disparity between the claimant's actual days worked and the 260–day (or 300–day) standard becomes unreasonable or unfair is "a question of line-drawing." *Duncanson–Harrelson*, 686 F.2d at 1343. Today, we draw the line where *Duncanson–Harrelson* left it: we conclude that when a claimant works more than 75% of the workdays of the measuring year the presumption that § 910(a) applies is not rebutted.[4]

Given that the statute contemplates that the number of days worked in the measuring year will ordinarily be less than 260 or 300 (as the case may be), the application of § 910(a) to Matulic, a claimant who worked 82% of the workdays in the year, is not only required but falls well within the realm of theoretical or actual "overcompensation" that Congress contemplated. We do not mean to suggest that a figure that is 75% or lower will necessarily result in the application of § 910(c). There may be other circumstances which demonstrate that a reduction in working days during the one-year period preceding the worker's injury is atypical of the worker's actual earning capacity. Under such circumstances, application of § 910(a) might still be required despite the lower percentage of actual days worked in the measuring year. In fact, although we do not rely on them here, some of those circumstances exist in Matulic's case.

■ To begin with, the ALJ's factual finding that Matulic's actual earnings during the year preceding his injury fairly represented his annual earning capacity is not supported by the record. The record demonstrates that Matulic's wage earning capacity was generally higher than that reflected by the number of days he worked during the year preceding his injury. During that year, Matulic moved from Los Angeles to Seattle, and several circumstances attendant to the move were responsible for a decrease in the total number of hours he worked during the tran-

sition period. Matulic testified, for example, that he did not work on a number of days during that period because he was moving into his new house and doing construction on it, a fact the ALJ does not dispute. Moreover, the ALJ noted but does not appear to have considered that, during the year after Matulic recovered from the injury at issue and returned to work in Seattle, his hours returned to nearly the same level as his previous hours in Los Angeles.[5] Thus, only during the interim year in which he moved from one location to another and was injured, was there a decrease of any significance in his working hours.

■ Furthermore, contrary to the ALJ's finding, we note that the nature of Matulic's employment in Seattle was not seasonal or intermittent but stable and continuous. Jones Stevedoring also argues that the Seattle port is smaller than the Los Angeles harbor and offers fewer work opportunities. First, there is no indication in the record that the Seattle port is operational during only part of the year or that its work schedules are sporadic. *See Palacios v. Campbell Industries*, 633 F.2d 840 (9th Cir.1980) (noting that longshore work may be considered intermittent if there is evidence that the port is closed seasonally or for fixed periods of time). To reach the conclusion urged by Jones Stevedoring, we would be required to conclude that no longshoreman working out of Seattle is employed continuously and none is entitled to have his average weekly wage computed under the presumptive formula of the Act. The record does not support such a drastic holding.

The ALJ's decision to apply § 910(c) to calculate Matulic's average weekly wage was contrary to law. We hold that § 910(c) may not be invoked in cases in which the only significant evidence that the application of § 910(a) would be unfair or unreasonable is that claimant worked more than 75% of the

---

4. Only the Seventh Circuit has drawn the line at the point at which Matulic finds himself, *see Strand v. Hansen Seaway Service, Ltd.*, 614 F.2d 572 (7th Cir.1980) (upholding application of § 910(c) when claimant worked 84% of total workdays in the measuring year). We do not believe such a rigid rule is consistent with the intent or purpose of the Act.

5. In 1987, Matulic worked approximately 2,001 hours; in 1988, he worked 2,059 hours; in 1989 (the year of the accident), he worked 1,300 hours; and in 1990, he worked 1,800 hours.

days in the year preceding his injury. Accordingly, we vacate the ALJ's determination of Matulic's average weekly wage and remand with instructions to calculate the award under § 910(a).

## II. § 914(e) Penalties

■ Matulic unsuccessfully argued before the ALJ that Jones Stevedoring never provided adequate notice of controversion as is required by 33 U.S.C. § 914(d). Such a failure would make the company liable for a ten percent penalty pursuant to § 914(e), which imposes that sanction for failure to pay "any installment of compensation payable without an award" unless the proper notice is filed within fourteen days of the triggering date. The penalty is added to all amounts unpaid between the date the notice should have been filed and the date notice was actually filed. Matulic challenges the ALJ's denial of the § 914(e) penalty and requests that it be assessed with respect to three items: 1) the retroactive adjustment of the temporary total disability award; 2) the transportation expenses incident to medical treatment; and 3) the permanent partial disability award.

■ As we have previously held, the employer must provide notice of controversion fourteen days after the employer has "reason to believe a controversy will arise." *National Steel & Shipbuilding Co. v. United States Dep't of Labor*, 606 F.2d 875, 879 (9th Cir.1979). We do not require that an actual dispute exist. *Id.* Here, the ALJ failed to identify a specific date upon which the notice requirement was triggered, but noted only a general time period of the month of December 1990. That finding was insufficient and possibly erroneous. The ALJ should have specified a date no earlier than December 8, 1989, when the employer unilaterally discontinued benefit payments, *see id.*, and no later than December 13, 1990, when Matulic's attorney spoke with Jones Stevedoring's claims manager and informed the manager of the dispute.

As for the date upon which Jones Stevedoring provided notice of controversion, on December 31, 1990, it sent Matulic a letter which the ALJ concluded "adequately satisfied the purpose behind the controversion requirements of the Act." Accordingly, on remand, the ALJ shall determine the date on which the notice requirement was triggered and assess the appropriate penalty with respect to the period commencing with the triggering date and ending on December 31, 1990. *See National Steel & Shipbuilding Co. v. Bonner*, 600 F.2d 1288, 1293–95 (9th Cir.1979) (assessing penalty commencing on date obligation to give notice first arises).

## III. Interest

■ Upon Matulic's motion for reconsideration of his original decision, the ALJ found that it "would be inequitable to assess interest against the Employer when the delay in payment of benefits was occasioned by the refusal of Claimant to accept the tender of appropriate benefits." This determination was in error, and we reverse.

We have held that interest on a disability award is mandatory. *See Sproull v. Director*, OWCP, 86 F.3d 895, 900 (9th Cir. 1996); *Foundation Constructors, Inc. v. Director*, OWCP, 950 F.2d 621, 625 (9th Cir. 1991). In *Sproull*, we accepted the Director's interpretation that "interest is a necessary and inherent component of 'compensation' because it ensures that the delay in payment of compensation does not diminish the amount of compensation to which the employee is entitled." *Sproull*, 86 F.3d at 900. Furthermore, we have extended this principle to "pre-judgment" interest, meaning that interest accrues from the date a benefit came due, rather than from the date of the ALJ's award. *See Hunt v. Director*, OWCP, 999 F.2d 419, 421–22 (9th Cir.1993). Jones Stevedoring argues that Matulic is not entitled to interest because he refused to accept its longstanding tender of benefits but it has not cited a single case in which a court has refused to award interest. Here, the employer retained the principal amounts of the payments to which Matulic was entitled and enjoyed the unrestricted use of those funds. Accordingly, it suffers no detriment from the requirement that it now pay interest on them. We reverse the ALJ's denial of interest and remand for a determination of when the payments became due and a determination of the total interest accrued.

*IV. Attorney's Fees*

 Jones Stevedoring argues that Matulic is not entitled to attorney's fees and costs pursuant to 33 U.S.C. § 928(b) because it agreed in advance to be bound by the June 24, 1991 recommendation of the OWCP as to the extent of Matulic's disability. The employer contends that the only issue remaining in dispute following the issuance of that recommendation was whether Matulic was entitled to attorney's fees, and that a claimant is not entitled to attorney's fees under such circumstances. *See Todd Shipyards Corp. v. Director, OWCP,* 950 F.2d 607, 610–11 (9th Cir.1991). Were the facts as Jones Stevedoring posits them, we might agree. The dispute, however, was broader.

We have stated that "the purpose of section 928 is to authorize attorney's fees against employers when the existence or extent of liability is controverted and the claimant succeeds in establishing liability or obtaining increased compensation." *E.P. Paup Co. v. Director, OWCP,* 999 F.2d 1341, 1354 (9th Cir.1993) (citing *National Steel & Shipbuilding Co. v. United States Dep't of Labor,* 606 F.2d 875, 882 (9th Cir.1979)). Here, the record reflects that the parties disagreed as to the method of calculating Matulic's disability benefits or with respect to the amount of compensation to which he was entitled, and that Matulic succeeded in obtaining a greater award than any offered by the employer or recommended by the OWCP. Accordingly, he is entitled to the attorney's fees attributable to the obtaining of that increase.

Contrary to the employer's assertions, this case is not controlled by *Todd Shipyards* in which we concluded that a claimant is not entitled to attorney's fees if after the informal conference there is no issue in dispute other than his entitlement to such fees. *Todd Shipyards,* 950 F.2d at 611. In *Todd Shipyards,* once the parties submitted the case to the OWCP and received its recommendation, there was no longer any dispute between them with respect to the amount of compensation to be awarded to the claimant. By contrast, here, following the issuance of the OWCP recommendation on June 24, 1991, which for these purposes is the functional equivalent of an informal conference, the parties continued to disagree as to the procedure to be used in arriving at the average weekly wage calculation and the amount of disability compensation to which Matulic was entitled.[6] If the attorney's fees were the only issue in dispute from that time forward, Matulic would not be entitled to an award of attorney's fees. But following the informal conference, the amount of claimant's disability compensation remained in dispute and indeed became the central issue before the ALJ. Under these circumstances, Matulic is entitled to the attorney's fees attributable to his obtaining the greater disability award.

Jones Stevedoring notes that in *Todd Shipyards* we stated that payment of attorney's fees under § 928(b) is authorized "only if the employer refuses to pay the amount of compensation recommended by the claims examiner following an informal conference." *Id.* at 610. The employer argues that it did not refuse to accept the OWCP's recommendation of June 24, 1991, and accordingly attorney's fees are not authorized. Jones Stevedoring has misinterpreted the rule we adopted in *Todd Shipyards.* As we reported above, the facts in *Todd Shipyards* were unusual in that as a result of the informal conference the parties reached complete agreement on all issues except for attorney's fees. The holding in that case is simply that § 928(b) is inapplicable when, following the informal conference, there is no longer any dispute regarding the employee's right to disability compensation or other benefits or reimbursement. Most important, *Todd Shipyards* reiterated our earlier explanation of the intent underlying the enactment of § 928(b).

The purpose of Section 928(b) is to authorize the assessment of legal fees against

---

**6.** We note that, for a brief period after June 24, Matulic was prepared to compromise as to the average weekly wage computation if Jones Stevedoring made other concessions, including the payment of attorney's fees, medical transportation costs, and benefits for an extended period of time. Although Matulic expressed a willingness to reach a compromise agreement on these terms, he maintained that legally he was entitled to the calculation of his award under § 910(a). Once the employer rejected Matulic's package offer, Matulic immediately made it clear that he would continue to contest the use of § 910(c) to compute his average weekly wage.

employers in cases where the existence or extent of liability is controverted and the employee-claimant succeeds in establishing liability or obtaining increased compensation in *formal* proceedings in which he or she is represented by counsel.

*Id.* (quoting *National Steel,* 606 F.2d at 882) (emphasis in original).

 Under the rule we announced in *National Steel* and later followed in *E.P. Paup Co.,* the claimant is entitled to attorney's fees where the extent of liability is controverted and the claimant successfully obtains increased compensation, "whether or not the employer had actually rejected an administrative recommendation." *National Steel,* 606 F.2d at 882. While in *National Steel* no administrative recommendation had been made, we relied on *Universal Terminal & Stevedoring Co. v. Parker,* 587 F.2d 608, 612 (3rd Cir.1978), in reaching our conclusion, and specifically noted that the Third Circuit upheld an award of attorney's fees despite the fact that the employee rejected the recommendation of the OWCP and the employer had accepted it. *National Steel,* 606 F.2d at 882. Accordingly, we conclude that because Matulic prevailed on issues that remained in dispute following the informal conference and obtained a greater award on appeal, he is entitled to attorney's fees even though Jones Stevedoring did not reject the OWCP recommendation.[7]

## CONCLUSION

The ALJ's application of § 910(c) was contrary to law. Accordingly, we VACATE the determination of Matulic's average weekly wage, and REMAND for a proper computation of that figure under § 910(a), and of the amount of the disability compensation to which Matulic is entitled. With regard to the § 914(e) penalties, we REVERSE the ALJ's denial of penalties and REMAND for a determination of the amount of the penalty award. Because we conclude that interest is mandatory, we REVERSE the ALJ's denial of interest and REMAND for a determination of the interest accrued from the date

payments became due. As to the attorney's fees, we REVERSE the denial of fees and REMAND for a proper computation of fees consistent with this opinion. It is so

ORDERED.

REED, District Judge, concurring in part and dissenting in part:

I respectfully dissent from parts I and IV of the majority opinion, and concur in the remainder.

Although it is a close question, I believe for three reasons that it is neither reasonable nor fair to calculate Mr. Matulic's compensation according to 33 U.S.C. § 910(a). First, when "computation [under § 910(a) or (b)] results in excessive compensation of the claimant in light of the injured worker's actual employment record," § 910(c) should be employed. *Duncanson–Harrelson Co. v. Director, OWCP,* 686 F.2d 1336, 1342 (9th Cir. 1982), *vacated,* 462 U.S. 1101, 103 S.Ct. 2446, 77 L.Ed.2d 1329 (1983) *aff'd in relevant part on remand,* 713 F.2d 462, 463 (9th Cir.1983). Mr. Matulic worked 82% of the time in the year preceding his injury, but will be compensated for his injury as if he had worked 100% of the time. Unlike the majority, I believe "this disparity is large enough to justify application of subsection (c) in order to avoid excessive overcompensation." *Duncanson–Harrelson,* 686 F.2d at 1343. Second, by holding that § 910(a) presumptively applies when an injured longshoreman works more than 75% of the time in the year preceding an injury, the majority has consciously created an inter-Circuit conflict. *Strand v. Hansen Seaway Service,* 614 F.2d 572, 574 (7th Cir.1980) (§ 910(c) proper where petitioner worked 84% of preceding year). Although *Duncanson–Harrelson* does endorse the sort of bright line rule the majority announces, *Duncanson–Harrelson* itself avoids deciding the issue and nothing in our case law requires us to adopt 75% as the minimum percentage. *Duncanson–Harrelson,* 686 F.2d at 1343. Third, under old but still

---

7. Because, as we have noted, interest attaches automatically to principal in the type of case before us, the attorney's fees attributable to pursuing the interest issue are also recoverable. So, too are the fees attributable to establishing the

ancillary penalty amounts to be paid. Matulic is not, however, entitled to attorney's fees with respect to the medical transportation expenses because the employer did not dispute his entitlement to those costs.

valid Ninth Circuit authority § 910(a)'s 260–day work year does not accurately reflect Petitioner's earning capacity in the year preceding his injury, because he was not ready and willing to work a full year during that period. *Marshall v. Andrew F. Mahony Co.*, 56 F.2d 74, 78 (9th Cir.1932) ("[E]arning capacity means fitness and readiness and willingness to work . . . ." (quoting court below); *see Palacios v. Campbell Industries*, 633 F.2d 840, 843 (9th Cir.1980) (compensation awards should be based on earning capacity). In my view, Mr. Matulic's explanation for his shortened work year in 1989, that he was moving and working on his house, weighs against granting him a windfall at Jones Stevedoring's expense. I am reluctant to resolve this close question in Mr. Matulic's favor where his reduced earnings are not the result of illness, layoff, or other factors beyond his control. *See Walker v. Washington Metropolitan Area Transit Authority*, 793 F.2d 319, 322 (D.C.Cir.1986) (listing such "involuntary" circumstances where use of § 910(c) has been upheld).

As for attorney's fees, the plain language of 33 U.S.C. § 928(b), as well as the statute's legislative history, led this Court to announce the following test: "the employer will not be responsible for the payment of attorneys' fees, unless the employer rejects the written recommendation of the claims examiner following the informal hearing . . . ." *Todd Shipyards v. Director, OWCP*, 950 F.2d 607, 611 (9th Cir.1991). Since Mr. Matulic does not dispute that the claims examiner's June 24, 1991 letter proposing a settlement is the legal equivalent of an informal conference, I see no principled distinction between the present case and *Todd Shipyards*. 20 C.F.R. § 702.311 (disputes may be handled informally by conference, telephone, or written correspondence). As in *Todd Shipyards*, a dispute arose over permanent disability benefits and OWCP proposed a settlement, which the employer immediately accepted without condition but the employee did not.

The majority correctly observes that the scope of Mr. Matulic's disagreement with the claims examiner's recommendation was greater than that of the worker in *Todd Shipyards*, but this is a distinction without a difference, as a review of the fee-shifting statute reveals. Section 928(b) permits an award of attorney's fees only when the employer "refuse[s] to accept" the OWCP's recommendation; neither the worker's rejection of the recommendation nor the nature of any remaining disputes are relevant. 33 U.S.C. § 928(b). If the employer so "refuse[s] to accept [the OWCP's] written recommendation," then it must immediately pay or tender the amount "to which [it] believe[s] the employee is entitled." *Id.* "[I]f the compensation thereafter awarded is greater than the amount paid or tendered by the employer," only then the employer is liable for an attorney's fee "based solely upon the difference between the amount awarded and the amount tendered or paid." *Id.* In short, as this Court concluded in *Todd Shipyards*, "[s]ection 928(b) authorizes a payment of attorney's fees only if the employer refuses to pay the amount of compensation recommended by the claims examiner following an informal conference." *Todd Shipyards*, 950 F.2d at 610. Since Jones Stevedoring accepted the OWCP's written recommendation, the threshold condition to an award of attorney's fees has not been met, and Petitioner's disagreement with the claims examiner's recommendation is immaterial. Accordingly, although Mr. Matulic's final award is greater than that proposed by the claims examiner, "[s]ection 928(b) is inapplicable because [Jones Stevedoring] did not refuse to pay" him compensation. *Todd Shipyards*, 950 F.2d at 610. Consequently, I would affirm the denial of attorney's fees.